UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

FILED BY _____ D.C.

APR 20 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

CASE NO. 20-CIV ___60817 Singhal___

| | |
|---|---|
| **DON KOZICH**, Individually<br>Plaintiff(s),<br>v. | **VERIFIED COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

**ANN DEIBERT** (Deibert), Individually, and in her official capacity as Chief executive Officer of Broward County Housing Authority (PHA) and as Secretary of Building Better Communities Inc (BBC), Broward Workforce Communities Inc (BWC), Reliance-Progresso Associates Ltd (RPA) d/b/a Progresso Point (PP) LIHTC Apartments, McCan Communities, Inc. (McCAN), and Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively "Affiliates";

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** (HUD), a Federal Department/Agency;

**U.S. DEPARTMENT OF VETERAN AFFAIRS** (VA), a Federal Department/Agency;

**BROWARD COUNTY HOUSING AUTHORITY** (PHA) a Public Housing Authority Chartered under Chapter 421, Fla.Stat.;

**BUILDING BETTER COMMUNITIES, INC.** (BBC) a Not for Profit domestic Florida Registered Corporation;

**BROWARD WORKFORCE COMMUNITIES, INC.** (BWC), General Partner of Reliance-Progresso Associates, Ltd. and a for Profit domestic Florida Registered Corporation;

**RELIANCE-PROGRESSO ASSOCIATES, LTD.** (RPA), a for Profit domestic Florida Registered Limited Partnership, d/b/a Progresso Point LIHTC Apartment Community (PP);

**McCAN COMMUNITIES, INC.,** (McCAN), a Florida Registered Not for Profit Corporation;

**OAKLAND PRESERVE, LLC.** (OPL), a Florida Limited Liability Company;

**OP-BETTER COMMUNITIES DEVELOPMENT, LLC.** (OPCD), a Florida Registered Limited Liability Company;

1

**MICHAEL S. LONG** (LONG), Individually and in his official capacity as a Commissioner of the Broward County Housing Authority (PHA), former Chairman of the Board of Commissioners of the Broward County Housing Authority (PHA), former President of Broward Workforce Communities, Inc. (BWC), former President of Building Better Communities, Inc. (BBC), former President of McCan Industries, Inc. (McCAN), and former President of Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively ("Affiliates");

**MARK O'LOUGHLIN** (O'Loughlin), Individually and in his Official capacity as a Commissioner and Chairman of the Board of Commissioners of the Broward County Housing Authority (PHA), President of Broward Workforce Communities, Inc. (BWC), President of Building Better Communities, Inc. (BBC), President of McCan Industries, Inc. (McCAN) and President of Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively ("Affiliates");

**NOAH SZUGAJEW** (Szugajew), Individually and as Executive Assistant to Ann Deibert (BCHA);

**TIMOTHY THOMAS** (Thomas), Individually and as In-house Investigator for BCHA;

**TEISHA PALMER** (Palmer), Individually and as Procurement Specialist for BCHA;

**NIVIA ROLDAN** (Roldan), Individually and as Assisted Housing Director for BCHA;

**MICHAEL T. BURKE** (Burke), individually and as outside counsel to BCHA and Partner/Shareholder of Johnson, Anselmo, Murdoch, Burke, Piper PA (Johnson PA);

**JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER PA** (Johnson PA) as outside counsel to BCHA;

**DREW SHERIDAN** (Sheridan), individually and as outside counsel to BCHA and RPA in Kozich's bankruptcy, Case No. 15-17458-JKO, and as President of Drew S. Sheridan PA (Sheridan PA);

**DREW S. SHERIDAN PA** (Sheridan PA) as outside counsel to BCHA and RPA in Kozich's bankruptcy, Case No. 15-17458-JKO;

**MICHAEL LESSNE** (Lessne), Individually and as outside counsel to BCHA in Kozich's bankruptcy, Case No. 15-17458-JKO; formerly with GrayRobinson, PA (GrayPA) and currently Partner in Nelson Mullins Riley and Scarborough LLP d/b/a Nelson Mullins Broad and Cassel (Nelson Mullins);

**GRAYROBINSON, PA** (GrayPA) as outside counsel to BCHA in Kozich's bankruptcy, Case No. 15-17458-JKO;

**DAVID TOLCES** (Tolces), Individually and as outside counsel to BCHA; as Partner in Weiss Serota Helfman Cole & Bierman, PL (Weiss Serota) current outside counsel to BCHA and as former employee of Goren Cherof Doody & Ezrol PA (Goren Cherof) former counsel to BCHA;

**WEISS SEROTA HELFMAN COLE & BIERMAN, PL** (Weiss Serota) current outside counsel to BCHA;

**SAMUEL S. GOREN** (Goren), Individually and as former outside counsel to BCHA and as President of Goren Cherof Doody & Ezrol PA (Goren Cherof), former outside counsel to BCHA;

**GORE CHEROF DOODY & EZROL PA (Goren Cherof)** as former outside counsel to BCHA;

**FLORIDA HOUSING FINANCE CORPORATION** (FHFC), a Florida Public Corporation Chartered under Chapter 420, Fla.Stat;

**HEATH RYAN STOKLEY** (Stokley), Individually and as outside counsel to Florida Housing Finance Corporation (FHFC), and as Partner/Shareholder with Nabors, Giblin & Nickerson PA (Nabors PA);

**NABORS, GIBLIN & NICKERSON PA** (Nabors PA) as outside counsel to Florida Housing Finance Corporation;

**SYRIE ORTIZ,** Individually and as Vice-President of Professional Property Management, Inc. (PMI), former property manager at BCHA's LIHTC properties;

**OLGA VAZQUEZ**, Individually and as former Property Manager at RPA for Professional Management Inc (PMI);

**PROFESSIONAL MANAGEMENT, INC**. (PMI), a for Profit domestic Florida Registered Corporation and former property manager at BCHA's LIHTC properties;

**KENNETH J. LOWENHAUPT PA,** a Florida Registered Professional Assoication, d/b/a **LOWENHAUPT SAWYERS & SPINALE** (LSS), outside counsel to PMI and RPA;

**KENNETH J. LOWENHAUPT** (Lowenhaupt), Individually and as President of LSS, and as outside counsel to PMI and RPA;

3

**REBECCA RADIN SPINALE** (Spinale), Individually and as outside counsel to PMI and RPA and as Partner in Lowenhaupt PA;

**BURNADETTE NORRIS-WEEKS PA** (BNORRIS) as hearing officer employed by BCHA in permanent termination of Kozich's HUD-HUD-VASH HCV;

**BURNADETTE NORRIS-WEEKS** (Weeks) Individually, as Hearing Officer employed by BCHA in permanent termination of Kozich's HUD-HUD-VASH HCV, and as President of (BNORRIS);

**BROWARD SHERIFF'S OFFICE** (BSO); a public safety political subdivision existing under the Florida Constitution and laws of the State of Florida;

**GREGORY TONY** (Tony), Individually and as Sheriff of Broward County;

**ERIC J. CALDWELL** (Caldwell), Individually and as an employee of BSO;

**THOMAS HINTON** (Hinton) (ID 11986), Individually and as an employee of BSO;

**SO HYON KIM** (KIM) (ID 17760), Individually and as an employee of BSO;

**ERIC WODKA** (Wodka) (ID 9986), Individually and as an employee of BSO;

**MICHAEL PAPARELLA** (Paparella) (ID 10356), Individually and as an employee of BSO;

**ALONSO LUZQUINOS** (Luzquinos) (ID 11245), Individually and as an employee of BSO;

**KRYSTLE LIVINGSTON** (Livingston) (ID 15810), Individually and as an employee of BSO;

**ROBERTO YUDICE** (Yudice) (ID 17940), Individually and as an employee of BSO;

**YASMANI GARCIA** (Garcia) (ID 17652), Individually and as an employee of BSO;

**PINNACLE HOUSING GROUP, LLC** (PHG) as a Florida Registered Limited Liability Company, parent of PHGB and co-developer of OP;

**TIMOTHY P. WHEAT** (Wheat), Individually and as Regional Vice President of PHG at OP;

4

**PHG BUILDERS LLC**, (PHGB), a Florida Registered Limited Liability Company and General Contractor at OP;

**FELIX BRAVERMAN** (Braverman), Individually and as Vice President of Construction and Qualifier for PHGB at OP;

**CURTIS CZONKA** (Czonka), Individually and as a Superintendent for PHGB at OP;

**DAXC, LLC** (DAXC), a Florida Registered Limited Liability Company and subcontractor at OP;

**DAVID O. DEUTCH** (Deutch), Individually and as Partner and Manager of DAXC;

**SAL'S TOWING, INC.** (Sals), a Florida Registered Corporation;

**SALVATORE BELLASSAI** (Bellassai), Individually and as President of Sals;

**CITY OF OAKLAND PARK** (City), a Florida Municipality existing under the Florida Constituituin and laws of the State of Florida;

**SPM OF ALABAMA LLC** (SPM), a Florida Registered Limited Liability Company and current property manager of BCHA's LIHTC apartment communities including RPA;

And all other interconnected and identity of interest affiliates, subsidiaries, and partnerships, and assigns, predecessors and successors in interest of defendants.
    Defendant(s)

-----------------------------

The Plaintiff, Don Kozich (Kozich), submits the following Verified Complaint and Demand for Jury Trial for various selected Counts against the above named Defendants, and under penalty of perjury, declares that he has read the Complaint, and that the facts stated in it are true, and further states:

## A. RESERVATION OF RIGHTS

Because of the complexity of this case, the numerous defendants, the Corona-19 Virus, the lack of resources with which to research and write his papers and motions,

along with the lack of any discovery, in order to preserve and maintain his constitutional right to due process, Kozich reserves his right to amend his pleadings at any time and to conform the pleadings to the evidence at any time.

## B. DEFINITIONS

1. **"BCHA"**. Broward County Housing Authority (PHA) is chartered under Chapter 421, Fla.Stat., as a public housing authority and secretly owns and controls RPA d/b/a Progresso Point Apartments (PP). Because of their legally recognized identity of interest and symbiotic relationship Appellee Reliance-Progresso Associates (RPA), the Broward County Housing Authority (PHA), Broward Workforce Communities, Inc. (BWC), and Building Better Communities, Inc. (BBC) are collectively referred to as "BCHA". RPA, BBC and BWC are all interlocking, interconnected and blended affiliates, subsidiaries, and partnerships of PHA which PHA now refers to as being "Discreet Partnerships" of PHA. RPA, BBC, and BWC are ultimately secretly owned and controlled by PHA under the autocratic and dictatorial control of CEO Ann Deibert, Board Chairman Mark O'Loughlin and former Board Chairman (now Commissioner) Michael Long. See, Note 1. to Excerpt of PHA's Bi-annual September 30, 2012 and 2013 Audited Consolidated Financial Statement that PHA ultimately owns and controls BBC, BWC, RPA and correspondingly PP. The affiliates and subsidiaries of BCHA have a legally recognized identity of interest with sharing the same officers, directors, commissioners, registered agent, employees, street address, offices, furniture, fixtures, equipment, phone number, fax number, _____@BCHAfl.org email addresses, attorney(s),

webmaster, and website. As an example of their being alter egos of each other in order to obtain and maintain tax exempt status, RPA recently sold Kozich's LIHTC 76 Unit apartment community, Progresso Point (PP), a $17.5 million plus dollar property, to PHA for the paltry sum of $10 and then leased it back from PHA for even the lesser sum of $1 per year for 99 years. As evidenced by the disparity in value vs. consideration, this was not an arms length transaction. These entities are also public entities: publishing notice of their public meetings, their agendas and their meeting minutes; holding public meetings consecutively on the same day each month; and maintain an "Official Record," being a CD recording, of each meeting. The acts and failure to act of any of these public entities are considered State Actions subject to State and Federal law.

2. **"BSO Deputies I"** Lt. Eric J. Caldwell, Sgt. Thomas Hinton (ID 11986), Deputy So Hyon Kim (ID 17760), and Deputy Eric Wodka (ID 9986) collectively.

3. **"BSO Deputies II"** BSO Sgt. Michael Paparella (ID 10356), BSO Deputy Alonso Luzquinos (ID 11245), BSO Sgt. Krystle Livingston (ID 15810), BSO Deputy Roberto Yudice (ID 17940), and BSO Deputy Yasmani Garcia (ID 17652) collectively.

4. **"ELIHA"** In order to obtain and maintain its LIHTC status, RPA entered into an Extended Low Income Housing Agreement **(ELIHA)** with Florida Housing Finance Corporation (FHFC) which is recorded in Broward County and therefore a land use regulation, Fla.Stat. 193.017(4) and 420.5099(6), and requires venue be in Broward County, FL. The ELIHA provides for the renewal of Kozich's lease as a protected property right and provides that a tenant may enforce compliance [R.241, Sec. 9. last

7

para.]. 24 CFR 982.308(a) and (f)(2); and 982.456(b)(2) also provide for private right of enforcement including that of the lease, the Tenancy Addendum (HUD-52641-A), and the Housing Assistance Payment (HAP) contract (HUD-52641) (not executed by tenant but withheld by BCHA).

5. "**LIHTC**" refers to Low Income Housing Tax Credit subject to IRS Code 26 USC § 42 which provides that tenants' right to lease renewal is a protected property right and requires evidence of good cause for not renewing a lease. See also, 24 CFR 552 requiring a hearing or trial and evidence of good cause not to renew a lease.

6. "**FHFC**" refers to the  Florida Housing Finance Corporation which is a quasi-state agency and is chartered under Chapter 420, Fla.Stat. by the State pursuant to IRS 25 USC § 42 to oversee and issue Federal tax credits to LIHTC properties such as  RPA here . The Extended Low Income Housing Agreement between FHFC and RPA by which RPA is extended tax credits pursuant to 26 USC § 42, provides for private right of enforcement; requires that RPA conform to HUD Policy Handbook 4350.3 which incorporates the Tenancy Addendum, HUD-52641-A; and requires evidence and proof of good cause not to renew a lease. Although the "Loan" documents are not attached to the Agreement it appears that FHFC also loaned RPA $4,480,000 in federal funds to develop the PP apartment community.

7. "**FMR**" refers to the Fair Market Rent for an apartment at Progress Point (PP). For 2015 BCHA illegally established two different FMR's at PP. For example, for a 1-Bedroom apartment at PP occupied by a Low Income tenant without HCV the rent is

$822 while for the exact same apartment occupied by a tenant with HCV the rent is $885, a difference of $63, a significant amount of money.

8. "**HCV**" refers to both the Section 8 Housing Choice Voucher program administered by HUD and to the voucher itself which is issued by PHA.

9. "**Lease**" refers to the approximate 40 page written agreement compiled by Kozich and executed on March 7, 2014 between Kozich and RPA for Contract Unit 408 at PP, 619 North Andrews Avenue., Fort Lauderdale, FL 33311. The March 7, 2015 Lease compiled by Kozich includes PHA's March 17, 2014 Housing Assistance Letter; the Tenancy Addendum, HUD-52641-A; and the Housing Assistance Payment (HAP) contract, HUD-52641, all of which takes precedence over the terms of RPA's "lease" which is incomplete and a fraud on the court.

10. "**LIHTC**" refers to Low Income Housing Tax Credit subject to IRS Code 26 USC § 42 which provides that a tenants right to renewal of his lease is a protected property right and requires proof of good cause for not renewing a lease.

11. "**Management Contract**" refers to the property management contract executed on January 31, 2014 between PMI and RPA for PMI's monopoly on management of PP. ????___The "Management Contract" requires that the apartments be 100% leased to low income families but PMI gave free or reduced rent apartments to its employees at each of BCHA's LIHTC apartment communities . By virtue of its terms and conditions, PHA, as RPA's parent, has final authority, oversight and control over PMI in its management of PP including authority to authorize renewal of Kozich's lease. In response to Kozich's

9

request to renew his lease, BCHA responded that it is deferring to PMI not to renew Kozich's lease. However, it is not PMI that is the plaintiff in Kozich's eviction case, but rather RPA that is the plaintiff in Kozich's State Court eviction case. In the meantime BCHA and PMI are holding **hostage** Kozich's HUD-HUD-VASH HCV federal housing subsidy, which expired on August 28, 2015, as leverage to force Kozich into vacating his apartment at PP. However, Kozich was still in imminent danger and at risk of losing his HUD-HUD-VASH HCV unless he found decent, safe and sanitary affordable housing and vacates his apartment. But BCHA and PMI blacklisted Kozich so that he was not able to find decent, safe and sanitary affordable housing in the Fort Lauderdale area. In 2019 SPM and RPA entered into an almost verbatim identical "Management Contract" and SPM continues with the illegal practice of providing its employees with free and reduced rent apartments at BCHA's LIHTC apartment communities it manages.

12. "**PP**" refers to Progresso Point which is an 8-story apartment community comprised of 76 studio and 1-bedroom apartments located at 619 North Andrews Avenue, Fort Lauderdale, Broward County, FL. PP is titled in RPA but is ultimately secretly owned and controlled by PHA. PP is a LIHTC apartment community which is tax exempt and pays no property taxes.

13. "**PPTO**" refers to the Progresso Point Tenants Organization which is a tenant organization promoted and organized by Kozich to advocate and foster better, safer, healthier and more efficient living conditions at PP. As a result of its activities PPTO

was instrumental in obtaining savings of $14,000 a year on electricity and getting the air-conditioning serving the enclosed hallways finally repaired and turned on after 4 months of tenants including children and babies having to endure the sweltering Florida summer temperatures and humidity in 2014 and 2015, and only 1 week before PHA and RPA had to appear before the Fort Lauderdale Code Enforcement Board following Kozich's complaint.  BCHA has never instituted the tenants organization required by ___ or sent up the $25 ____ in order to maintain the tenant organizations.

14. **"Pubic Records"**, **"Records"**, **"Public Records Request"** (PRR) and **Freedom of Information** (FOIA) are utilized interchangeably and include but are not limited to electronic versions, unprinted electronic versions, scanned versions, unprinted electronically scanned versions, electronic emails, unprinted electronic emails, etc., and include those records that are in the custody, possession or control of BCHA or  PMI, or both.

15. **"RPA"** refers to Reliance-Progresso Associates Ltd d/b/a PP which is the record owner of PP. However, both RPA and PP are ultimately secretly owned and controlled by PHA.

16. **"S8 Worksheet"** refers to the HUD Section 8 Resident Worksheet executed between Kozich and BCHA on December 19, 2014 wherein the monthly Contract Rent effective March 1, 2015 for Contract Unit 408 is $822, the Tenant Rent to Owner is $243 and HAP to Owner is $579.

17. **"VASH"** refers to the Veterans Affairs Supportive Housing program of the U.S.

Department of Veteran Affairs (VA), which is funded and overseen by the VA, implemented by HUD through its Housing Choice Voucher (HCV) program and administered by PHA. Kozich is the recipient of HUD-HUD-VASH HCV which paid 70% of his rent at PP.

18. For definitions of other terms Kozich adopts and incorporates herein by reference those definitions contained in the definitions contained in HUD Policy Handbook 4350.3 and the Tenancy Addendum HUD-52641-A which by their terms takes precedence over the terms and conditions of BCHA's lease.

## C. JURISDICTION AND VENUE

1. This action arises under 26 USC § 42 of the Internal Revenue Code and the First and Fourteenth Amendments to the U.S. Constitution.

2. Jurisdiction of this Court also arises under 28 USC § 1331, 28 USC § 1343(a)(3) and 28 USC § 1343(a)(4).

3. This Court has original jurisdiction over Kozich's claims under the Internal Revenue Code and over Kozich's constitutional claims pursuant to 28 USC § 1331 and 28 USC § 1343(a)(3). Kozich's constitutional claims are enforceable under 42 USC § 1983.

4. Kozich's request for declaratory relief is authorized by 28 USC § 2201 and 20 USC § 2202.

5. Neither the Rooker-Feldman Doctrine nor the Anti-Injunction Act, 28 USC § 2283, are applicable here. This Court has jurisdiction to enjoin and set aside State Court judgments that were obtained by BCHA through fraud on the State Court in that it should

have stricken BCHA's voluntary dismissal.

6. By reason that Kozich is the recipient of HUD-HUD-VASH HCV for his housing subsidy, which is incidental to his medical care, pursuant to Fla.Stat. 83.42(1), Florida's Residential Landlord Tenant Law, Chapter 83, Fla.Stat., had no application in State Court and has no application here.

7. Where applicable, this Court has supplemental jurisdiction to review Kozich's claims under Florida law pursuant to 28 USC § 1367(a) because they form part of the same case or controversy.

8. The ELIHA is recorded in the public records and a land use regulation, and requires that venue be in Broward County, Florida. Venue is also proper in Broward County under 28 USC § 1391(b) because it is the district in which all parties reside and in which all of the events establishing Kozich's claims occurred..

9. All conditions precedent including statutory prerequisites to the relief demanded herein and including Kozich exhausting all administrative remedies have been performed or have occurred, or have been waived or excused.

10. Kozich lacks an adequate remedy at law and is also entitled to injunctive relief.

## D. PARTIES

## 1. PLAINTIFF

**DON KOZICH** (Kozich) is an individual residing in Broward County, Florida, is not in the military service, is sui juris, and was such at all times material and relevant hereto.

13

## 2. DEFENDANTS

a. **ANN DEIBERT** (Deibert), Individually, and in her official capacity as Chief executive Officer of Broward County Housing Authority (PHA) and as Secretary of Building Better Communities Inc (BBC), Broward Workforce Communities Inc (BWC), Reliance-Progresso Associates Ltd (RPA) d/b/a Progresso Point (PP) LIHTC Apartments, McCan Communities, Inc. (McCAN), and Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively "Affiliates"; and is sui juris and was such at all times material and relevant hereto;

b. **U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** (HUD), a Federal Department/Agency;

c. **U.S. DEPARTMENT OF VETERAN AFFAIRS** (VA), a Federal Department/Agency;

d. **BROWARD COUNTY HOUSING AUTHORITY** (PHA) a Public Housing Authority Chartered under Chapter 421, Fla.Stat., is a public body corporate and politic, established pursuant to the United States Housing Act of 1937, 42 USC § 1401, et seq., as amended by the Housing and Community Development Act of 1974, 42 USC § 1437, et seq., and regulations promulgated there under and is the parent company of Affiliates, is sui juris, and was such at all times material and relevant hereto.

e. **BUILDING BETTER COMMUNITIES, INC.** (BBC) a Not for Profit domestic Florida Registered Corporation;

f. **BROWARD WORKFORCE COMMUNITIES, INC.** (BWC), General

14

Partner of Reliance-Progresso Associates, Ltd. and a for Profit domestic Florida Registered Corporation;

g. **RELIANCE-PROGRESSO ASSOCIATES, LTD.** (RPA), a for Profit domestic Florida Registered Limited Partnership, d/b/a Progresso Point LIHTC Apartment Community (PP);

h. **McCAN COMMUNITIES, INC.**, (McCAN), a Florida Registered Not for Profit Corporation;

i. **OAKLAND PRESERVE, LLC.** (OPL), a Florida Limited Liability Company;

j. **OP-BETTER COMMUNITIES DEVELOPMENT, LLC.** (OPCD), a Florida Registered Limited Liability Company;

k. **MICHAEL S. LONG** (LONG), Individually and in his official capacity as a Commissioner of the Broward County Housing Authority (PHA), former Chairman of the Board of Commissioners of the Broward County Housing Authority (PHA), former President of Broward Workforce Communities, Inc. (BWC), former President of Building Better Communities, Inc. (BBC), former President of McCan Industries, Inc. (McCAN), and former President of Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively ("Affiliates"); and is sui juris and was such at all times material and relevant hereto;

l. **MARK O'LOUGHLIN** (O'Loughlin), Individually and in his Official capacity as a Commissioner and Chairman of the Board of Commissioners of the

15

Broward County Housing Authority (PHA), President of Broward Workforce Communities, Inc. (BWC), President of Building Better Communities, Inc. (BBC), President of McCan Industries, Inc. (McCAN) and President of Oakland Preserve, LLC and OP-Better Communities Development, LLC (together OP), and collectively ("Affiliates"); and is sui juris and was such at all times material and relevant hereto;

m. **NOAH SZUGAJEW** (Szugajew), Individually and as Executive Assistant to Ann Deibert (BCHA); and is sui juris and was such at all times material and relevant hereto;

n. **TIMOTHY THOMAS** (Thomas), Individually and as In-house Investigator for BCHA; and is sui juris and was such at all times material and relevant hereto;

o. **TEISHA PALMER** (Palmer), Individually and as Procurement Specialist for BCHA; and is sui juris and was such at all times material and relevant hereto;

p. **NIVIA ROLDAN** (Roldan), Individually and as Assisted Housing Director for BCHA; and is sui juris and was such at all times material and relevant hereto;

q. **MICHAEL T. BURKE** (Burke), individually and as outside counsel to BCHA and Partner/Shareholder of Johnson, Anselmo, Murdoch, Burke, Piper PA (Johnson PA); and is sui juris and was such at all times material and relevant hereto;

r. **JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER PA** (Johnson PA) as outside counsel to BCHA;

s. **DREW SHERIDAN** (Sheridan), individually and as outside counsel to

16

BCHA and RPA in Kozich's bankruptcy, Case No. 15-17458-JKO, and as President of Drew S. Sheridan PA (Sheridan PA); and is sui juris and was such at all times material and relevant hereto;

t. **DREW S. SHERIDAN PA** (Sheridan PA) as outside counsel to BCHA and RPA in Kozich's bankruptcy, Case No. 15-17458-JKO;

u. **MICHAEL LESSNE** (Lessne), Individually and as outside counsel to BCHA in Kozich's bankruptcy, Case No. 15-17458-JKO; formerly with GrayRobinson, PA (GrayPA) and currently Partner in Nelson Mullins Riley and Scarborough LLP d/b/a Nelson Mullins Broad and Cassel (Nelson Mullins); and is sui juris and was such at all times material and relevant hereto;

v. **GRAYROBINSON, PA** (GrayPA) as outside counsel to BCHA in Kozich's bankruptcy, Case No. 15-17458-JKO;

w. **DAVID TOLCES** (Tolces), Individually and as outside counsel to BCHA; as Partner in Weiss Serota Helfman Cole & Bierman, PL (Weiss Serota) current outside counsel to BCHA and as former employee of Goren Cherof Doody & Ezrol PA (Goren Cherof) former counsel to BCHA; and is sui juris and was such at all times material and relevant hereto;

x. **WEISS SEROTA HELFMAN COLE & BIERMAN, PL** (Weiss Serota) current outside counsel to BCHA;

y. **SAMUEL S. GOREN** (Goren), Individually and as former outside counsel to BCHA and as President of Goren Cherof Doody & Ezrol PA (Goren Cherof), former

17

outside counsel to BCHA; and is sui juris and was such at all times material and relevant hereto;

z. **GORE CHEROF DOODY & EZROL PA (Goren Cherof)** as former outside counsel to BCHA;

aa. **FLORIDA HOUSING FINANCE CORPORATION** (FHFC), a Florida Public Corporation Chartered under Chapter 420, Fla.Stat;

bb. **HEATH RYAN STOKLEY** (Stokley), Individually and as outside counsel to Florida Housing Finance Corporation (FHFC), and as Partner/Shareholder with Nabors, Giblin & Nickerson PA (Nabors PA); and is sui juris and was such at all times material and relevant hereto;

cc. **NABORS, GIBLIN & NICKERSON PA** (Nabors PA) as outside counsel to Florida Housing Finance Corporation;

dd. **SYRIE ORTIZ,** Individually and as Vice-President of Professional Property Management, Inc. (PMI), former property manager at BCHA's LIHTC properties; and is sui juris and was such at all times material and relevant hereto;

ee. **OLGA VAZQUEZ,** Individually and as former Property Manager at RPA for Professional Management Inc (PMI); and is sui juris and was such at all times material and relevant hereto;

ff. **PROFESSIONAL MANAGEMENT, INC.** (PMI), a for Profit domestic Florida Registered Corporation and former property manager at BCHA's LIHTC properties;

gg. **KENNETH J. LOWENHAUPT PA,** a Florida Registered Professional Assoication, d/b/a **LOWENHAUPT SAWYERS & SPINALE** (LSS), outside counsel to PMI and RPA;

hh. **KENNETH J. LOWENHAUPT** (Lowenhaupt), Individually and as President of LSS, and as outside counsel to PMI and RPA; and is sui juris and was such at all times material and relevant hereto;

ii. **REBECCA RADIN SPINALE** (Spinale), Individually and as outside counsel to PMI and RPA and as Partner in Lowenhaupt PA; and is sui juris and was such at all times material and relevant hereto;

jj. **BURNADETTE NORRIS-WEEKS PA** (BNORRIS) as hearing officer employed by BCHA in permanent termination of Kozich's HUD-HUD-VASH HCV;

kk. **BURNADETTE NORRIS-WEEKS** (Weeks) Individually, as Hearing Officer employed by BCHA in permanent termination of Kozich's HUD-HUD-VASH HCV, and as President of (BNORRIS); and is sui juris and was such at all times material and relevant hereto;

ll. **BROWARD SHERIFF'S OFFICE** (BSO); a public safety political subdivision existing under the Florida Constituituin and laws of the State of Florida;

mm. **GREGORY TONY** (Tony), Individually and as Sheriff of Broward County; and is sui juris and was such at all times material and relevant hereto;

nn. **ERIC J. CALDWELL** (Caldwell), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

oo. **THOMAS HINTON** (Hinton) (ID 11986), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

pp. **SO HYON KIM** (KIM) (ID 17760), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

qq. **ERIC WODKA** (Wodka) (ID 9986), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

rr. **MICHAEL PAPARELLA** (Paparella) (ID 10356), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

ss. **ALONSO LUZQUINOS** (Luzquinos) (ID 11245), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

tt. **KRYSTLE LIVINGSTON** (Livingston) (ID 15810), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

uu. **ROBERTO YUDICE** (Yudice) (ID 17940), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

vv. **YASMANI GARCIA** (Garcia) (ID 17652), Individually and as an employee of BSO; and is sui juris and was such at all times material and relevant hereto;

ww. **PINNACLE HOUSING GROUP, LLC** (PHG) as a Florida Registered Limited Liability Company, parent of PHGB and co-developer of OP;

xx. **TIMOTHY P. WHEAT** (Wheat), Individually and as Regional Vice President of PHG at OP; and is sui juris and was such at all times material and relevant hereto;

yy. **PHG BUILDERS LLC**, (PHGB), a Florida Registered Limited Liability

Company and General Contractor at OP;

zz. **FELIX BRAVERMAN** (Braverman), Individually and as Vice President of Construction and Qualifier for PHGB at OP; and is sui juris and was such at all times material and relevant hereto;

aaa. **CURTIS CZONKA** (Czonka), Individually and as a Superintendent for PHGB at OP; and is sui juris and was such at all times material and relevant hereto;

bbb. **DAXC, LLC** (DAXC), a Florida Registered Limited Liability Company and subcontractor at OP;

ccc. **DAVID O. DEUTCH** (Deutch), Individually and as Partner and Manager of DAXC; and is sui juris and was such at all times material and relevant hereto;

ddd. **SAL'S TOWING, INC.** (Sals), a Florida Registered Corporation;

eee. **SALVATORE BELLASSAI** (Bellassai), Individually and as President of Sals; and is sui juris and was such at all times material and relevant hereto;

fff. **CITY OF OAKLAND PARK** (Oakland Park), a Florida Municipality existing under the Florida Constituituin and laws of the State of Florida;

ggg. **SPM OF ALABAMA LLC** (SPM), a Florida Registered Limited Liability Company and current property manager of BCHA's LIHTC apartment communities including RPA;

### E. THIS CASE IS OF EXCEPTIONAL IMPORTANCE, GREAT PUBLIC INTEREST AND IS LIKELY TO RECUR

The case is not moot because these types of eviction cases from federally subsidized housing are likely to recur. DeFunis v. Odegaard, 416 US 312, 318-

21

19, 94 S.Ct. 1704, 40 L. Ed 2d 164 (1974). Cases raising the issue of the legality of 'no cause evictions should not be rendered moot since they are capable of repetition, yet evading review'; DeFunis, 416 US at 318; moreover, ... it suggests that 'no cause evictions may surface in respect to other ... properties.'" Linares v Jackson, 548 F.Supp. 2d 21 (E.D.N.Y. 2008). The mootness doctrine does not destroy jurisdiction when the question before the court is of great public interest or is likely to recur. Enterprise Leasing Co. v Jones, 789 So.2d 964, 965-66 (Fla. 2001). See also, Mendoza v. Frenchman Hill Apartments, 2005 WL 6581642 (E.D. Wash., Jan. 20, 2005) (because the landlord had not as yet fully complied with the IRS "No-Cause Eviction Protection" Ruling 2004-82 and the landlord's alleged violations of 26 USC § 42 may continue in the interim, the court found that the issue is not moot and that a live controversy still existed, that the good cause eviction of tenants from LIHTC properties is governed by the due process clause and the landlord is required to provide the tenant with timely and adequate notice detailing the reasons for a proposed termination or eviction).

This is a case of exceptional importance, great public interest and is likely to recur because:

1. Prison population would be reduced by 1.8% if veterans can find and maintain affordable housing; [1]

---

[1] VETERANS RESOURCE GUIDE FOR THE [FLORIDA] STATE COURT SYSTEM (2014):

Page 9; "..., veterans account for nine [9%] of every 100-hundred individuals in United States jails and prisons. ...."

22

2.  More than 9% of American children (6.8 million) were not only living in poverty in 2009 but in extreme poverty, or at less than 50% of the federal poverty level;[2]

3.  There is a critical shortage of affordable housing in Florida;

4.  Chapter 83, Fla.Stat., Florida Residential Landlord Tenant law, favors landlords who can afford the great cost of a strong lobby in Tallahassee to make one-sided law favoring landlords especially in instances of retaliatory eviction as here where the landlord breached its warranty of habitability and then refused to renew the tenant's lease in retaliation for, among other tenant rights, the tenant publishing a newsletter, forming a tenants organization and complaining to government authorities;

5.  It's not enough to have something written into law; if a law isn't enforced, it might as well not exist. And if ordinary citizens, such as BCHA's

---

Page   10:   "....   one   in   five   [20%]   incarcerated   veterans   were experiencing long-term homelessness prior to being admitted to jail.   ...."

But for being homeless 1.8% (20% of 9%) of the prison population would not be in prison. This equates to the prison population being reduced by 1.8% with veterans having found affordable housing.

[2] OUT IN THE COLD: THE FAILURE OF TENANT ENFORCEMENT OF THE LOW-INCOME HOUSING TAX CREDIT (LIHTC), 82 U.Cin.L.Rev 1079, Desiree C. Hensleyal, 2014, fn. 9. National Center for Children in Poverty (2011) (A well reasoned, well-researched and succinct study on the disastrous Eastmoor Estates LIHTC housing community costing taxpayers $1 Billion to clean-up the cesspool).

tenants, are too scared of what would happen to them if they exercised their rights, such as their being evicted or arrested or jailed (all of which BCHA did to Kozich but the State Attorney dropped the cases), then they don't really have those rights at all. As evidence of BCHA's dictatorship and stranglehold on tenants, only a total of 2-3 tenants, at the very most, appeared over the total of four (4) years and approximately 40 public meetings that Kozich has attended at BCHA. BCHA went so far as to have its bankruptcy lawyer email the members of the Federal Bankruptcy Bar <u>not</u> to take on Kozich's representation;

6.   Florida landlords, including BCHA, know that Chapter 83, Fla.Stat. is one-sided, favors them and take advantage of that favoritism;

7.   Neither Chapter 83, <u>Florida Landlord-Tenant</u> Law (eviction) nor Fla.Stat. 82.04 (unlawful detainer) are applicable to the facts of Kozich's state case. Fla.Stat. 83.42(1) makes Chapter 83, <u>Florida Residential Landlord Tenant</u> law, inapplicable to Kozich because he is a HUD VASH-HCV recipient with his housing being incidental to his health care (health case is the first and primary requirement for entry into the VASH program and Fla.Stat. 82.04 (unlawful detainer) does not apply to residential property, Fla.Stat. 82.04(2). As neither Chapter 83, <u>Florida Residential Landlord Tenant</u> law (eviction) nor Fla.Stat. 82.04 (unlawful detainer) are applicable to Kozich's case in County Court, the County Court lacked

24

subject matter jurisdiction over BCHA's complaint. See, Fla.Stat. 34.011(1) and (2).

8. Without a means to enforce landlord tenant laws and resolve legitimate landlord-tenant issues in the courts, tenants have no recourse against unscrupulous landlords;

9. **THE SHELL GAME**. Through its various secret and undisclosed affiliates and subsidiaries BCHA is sitting on over $25,000,000 ($25 million) in cash yet there is an epidemic shortage of affordable housing in Broward County. As expressed by its immediate past Chairman, Michael Long, BCHA is "building a brand," but at a cost to Broward County residents.

10. **THE CONTINUING SHELL GAME**. While McCan Communities, Inc. (McCan) has no tangible assets or liabilities it holds over $7.5 million in cash which it receives in unexplained "contributions" from unidentified persons (most probably from its LIHTC properties and other affiliates and subsidiaries of BCHA. Utilizing the example of the (illegal) practice of a private developer it met at the recent FARO Conference, BCHA utilizes McCan as a shell to keep its cash out of the reach of HUD. However, BCHA is not a private developer. BCHA is a state agency and comparing BCHA's organizational chart from 2013 to that of 2018 (after Kozich raised the issue of McCan's $7.5 million cash as an issue) now

25

shows McCan as an "orphan" off by itself with no ties to BCHA. BCHA mistakenly thinks that by erasing a line from its organizational chart that it could sever its ties to McCan. BCHA has no explanation for McCan's $7.5 million cash and for its 2019 Operating Budget, McCan shows zero income for 2017, 2018 and 2019 in contributions from the other BCHA affiliates and subsidiaries. From the August 21, 2018 BCHA meeting, without any justification BCHA is arbitrarily increasing rents by approximately 5% at five (5) of its non-LIHTC apartment communities totaling 111 units. Deibert indicated the approximately $59,220 additional annual income from the rent increases will be siphoned off, but no line item, to fill McCan's coffers. BCHA created McCan and with sharing corporate officers, offices, etc. McCan has a legally recognized "identity of interest" to BCHA thereby also making it a state agency. HUD regulations require that BCHA not hoard cash and spend 50% of its cash. Kozich believes BCHA utilizes McCan as a shell to secretly hoard cash.

11. "All governmental entities in Florida are subject to the requirements of the Sunshine Law unless specifically exempted." Sarasota Citizens for Responsible Government v. City of Sarasota, 48 So. 3d 755, 762 (Fla. 2010). BCHA continues to misrepresent that PP is "privately-owned" and "not a state actor" when actually RPA was created by and is secretly owned and controlled by PHA which makes all of RPA's actions and

26

failure to act "state actions". See also, Mendoza v. Frenchman Hill Apartments, 2005 WL 6581642 (E.D. Wash., Jan. 20, 2005) [rejecting housing authority's argument that it only held a minute (approximately .1%) interest in its LIHTC apartment community which is equal to or less than BCHA's ownership interest in RPA, the de jure record owner of PP]. As required by federal and Florida law for "state actors", BWC a/k/a RPA publishes notices of its public meetings, holds its meetings out to the public and as required by law allows time for public comment. As further evidence of BWC a/k/a RPA being a "state actor," as required by Fla.Stat. 286.011 back on July 18, 2018 RPA held a closed "shade session" with its Commissioners and lawyers to discuss Kozich's Federal and State case.

12. Tenants who receive federal rent subsidies under Section 8 have "constitutionally protected property rights in an expectation of continued occupancy and receipt of rent and utility subsidies." Jeffries v. Georgia Residential Finance Authority, 678 F.2d 919 (11th Cir. 1982). Private owners of federally assisted housing are subject to constitutional restrictions because of their close involvement with the federal government. Geneva Towers Tenants Org. v Federated Mortgage Inv., 504 F.2d 482 (487-88 (9th Cir. 1974).

13. A tenant's right in a federally supported program to renewal of his lease is a constitutionally protected property right. Ruffin v. Housing Authority, 301

F.Supp. 251, 253 (E.D. La. 1969) (holding that "the right of a tenant to public housing is no less 'property' under the Fifth and Fourteenth Amendments than the right of a student to remain in school."); Ressler v. Pierce, 692 F.2d 1212 (9th Cir. 1982) (holding applicants for federal rent subsidies have constitutionally protected property interests); and Joy v. Daniels, 479 F.2d. 1236, 1241 (4th Cir. 1973) (holding that low-income tenant in private housing with a federal rent subsidy has cognizable property interest in continuing his tenancy absent good cause to terminate).

14. Housing authorities cannot terminate tenancies unless they have followed the procedural rules prescribed by HUD. Thorpe v Hous. Auth. of Durham, 386 US 670 (1967), on remand, 393 US 268 (1969). Section 8 "tenants may claim procedural due process rights under the due process clause if they have a substantial property interest in continued occupancy". Jeffries v. Ga. Residential Fin. Auth., 678 F.2d 919, 925 (11th Cir. 1982).

15. The HUD Tenancy Addendum (HUD-52641-A); LIHTC under 26 USC § 42; the ELIHA (R.222-52); HUD VASH-HCV under 24 CFR 982.552; HUD Section 8 Housing Choice Vouchers, Revised Implementation of the HUD-VA Supportive Housing, 77 FR 17086 [Docket FR-5596-N-01], March 23, 2012 and IRS Ruling 2004-82 (adopting HUD Tenancy Addendum) (R.410-25, 220-21) all mandate "No Cause Eviction

28

Protection", proof and evidence of good cause not to renew a lease and a due process mandated hearing and trial.

16. RPA entered into an **undisclosed but recorded** Extended Low Income Housing Agreement (ELIHA) with FHFC which is recorded in Broward County and therefore a land use restriction. The ELIHA provides for the renewal of Kozich's lease as a protected property right and requires evidence and proof of good cause not to renew Kozich's lease. The undisclosed ELIHA by which the FHFC allocated tax credits to RPA provides: (1) For private right of enforcement [Sec. 9. last para.]; (2) Mandates [para. (r)(ii)] that RPA conform to HUD Policy Handbook 4350.3 which incorporates the HUD Tenancy Addendum, HUD-52641-A; (3) Mandates "No-Cause Eviction Protection" [para. (c)] which requires evidence and proof of good cause not to renew a lease; and (4) Mandates that RPA implement and maintain seven (7) Resident Programs which it has never been done. 24 CFR 982.308(a) and (f)(2); and 982.456(b)(2) also provide for private right of enforcement including that of the "model" lease, the  HUD Tenancy Addendum (HUD-52641-A) which Kozich did not execute, and the Housing Assistance Payment (HAP) contract (HUD-52641) (executed between housing authority and landlord, not by the tenant).

17. The undisclosed ELIHA mandates "No-Cause Eviction Protection" and is

recorded in the public records of Broward County, and therefore a land use restriction or regulation which runs with the land, similar to that of a deed restriction. A & P Investment Group, Inc. v. The Circle Property Owners Assoc., Inc., 741 So.2d 1139 (Fla. 4h DCA 1998). "A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land." Palm Beach Cty. v Cove Club Investors, Ltd., 734 So.2d 379, 382 n.4 (Fla. 1999) and Alternative Networking, Inc. v Solid Waste Auth. of Palm Beach Cty., 758 So.2d 1209, 1211 (Fla. 4th DCA 2000). Under Florida law, where a party seeks an injunction to prevent the violation of a restrictive covenant, the party need not allege or show irreparable injury. "Appropriate allegations showing the violation are sufficient and the violation itself amounts to irreparable injury." Stephl v Moore, 94 Fla. 313, 114 So. 455 (1927). The rule excusing proof of irreparable harm also avoids the need for the party seeking to enforce a restrictive covenant to demonstrate the absence of an adequate remedy at

30

law. Autozone Stores, Inc. v Northeast Plaza Venture, LLC., 934 So.2d 670, 673 (Fla. 2d DCA 2006). LIHTC tenants have the right to enforce restrictive covenants that, among other things, do not allow a state credit allocation agency to terminate a property from the program for an owner's noncompliance. Nordbye v. BRCP/ GM Ellington, 266 P.3d 92 (Ore. Ct. App., 2011) (a well reasoned study and opinion on the tenant's right of enforcement of the LIHTC program).

18. In secretly depriving Kozich of any hearings and trial in state court BCHA deprived Kozich of his constitutionally protected right to due process and equal protection, and is in violation of HUD regulations, Elements of Due Process, HUD Legal Opinion GCH-0078 (September 4, 1992), requiring a court hearing or trial to meet due process requirements as defined in 24 CFR 966.53(c) and HUD Section 8 Housing Choice Vouchers, Revised Implementation of the HUD-VA Supportive Housing, 77 FR 17086 [Docket FR-5596-N-01], March 23, 2012, and under the U.S. and Florida Constitutions.

19. HUD Section 8 Housing Choice Vouchers, Revised Implementation of the HUD-VA Supportive Housing, 77 FR 17086 [Docket FR-5596-N-01], March 23, 2012 requires that "HUD-VASH vouchers ... are administered in accordance with ... 24 CFR part 982."; and waives 42 USC 1437d(s); 42 USC 13661(a), (b) and (c); and 24 CFR 982.552 and 982.553 in regard

31

to denial of admission and prohibits PHAs from screening any potential eligible family members or deny assistance for any grounds permitted under 24 CFR 982.552 (broad denial for violations of HCV program requirements). After illegally "evicting" Kozich by secret email, in further retaliation for Kozich exercising his constitutional rights to free speech advocating for better, healthier and safer living conditions, for promoting a tenant's organization and for publishing a monthly newsletter at PP, and contrary to HUD Section 8 Housing Choice Vouchers, Revised Implementation of the HUD-VA Supportive Housing, 77 FR 17086 [Docket FR-5596-N-01], March 23, 2012 CHA utilized its illegal "eviction" to then illegally permanently terminate Kozich's HUD VASH-HCV so that now he has no voucher with which to even find affordable housing. All of Kozich's actions are Fair Housing Act and Civil Rights activities protected by 28 USC § 1443 and also his disability and free speech and free association activities are protected under the First and Fourteenth Amendments to the U.S. Constitution. Knight v. Sanford Hous. Auth., No. 97-1225-CIV-ORL-19B (M.D. Fla. Jan. 30, 1998) and McQueen v. Druker, 438 F.2d 781, 785 (1st Cir. 1992).

20. Opinions on appeals from state county court to state circuit court are seldom published and any published opinions are usually ignored by other circuits and the district courts; and

32

21. Any opinion (published or unpublished) of this court will affect these large numbers of tenants, landlords and housing authorities alike.

For the reasons given this case is of exceptional importance, of great public interest and is likely to recur, and the non-final Default Final Judgment for Removal of Tenant and Alias Writ of Possession should be reversed nunc pro tunc.

## F. LITIGATION HISTORY

### 1) BCHA'S EVICTION IN STATE COURT, COCE15004735 (50), AND APPEAL, CACE16001144

On November 4, 2019 the Circuit Court of Appeals reversed the Default Final Judgment for Removal after which Kozich filed his January 2, 2020 Motion Following Reversal Opinion of Circuit Court of Appeals to Forthwith Restore Kozich's Occupancy, to Void Nunc Pro Tunc Permanent Termination of Kozich's HUD VASH-HCV and for Extension of Time to Serve Counterclaim. In order to evade enforcement of the Circuit Court's mandate and in furtherance of its fraud on the court, on January 7, 2020 BCHA then fraudulently filed its Notice of Voluntary Dismissal pursuant to Fla.R.Civ.P. 1.420(a) so as to evade compliance with the Circuit Court's reversal.

On January 15, 2020 Kozich filed his Expedited Verified Motion to Strike Plaintiff's (BCHA) Voluntary Dismissal, and for Other Relief which in part alleged fraud on the court, that Kozich had a constitutionally protected property right and was entitled to possession of his property and that BCHA had obtained a decision from former Judge Skolnik which was reversed on appeal.

33

During the February 13, 2020 hearing on Kozich's cross-examination, BCHA's attorney, Kenneth Lowenhaupt, identified five (5) ex parte communications, faxes and emails that he had with former Judge Skolnik or his JA relating to this case which were not copied to Kozich, admitted conducting 800 to 900 evictions a month and that it was his practice to have ex parte communications with numerous Judges and JAs in all courts throughout Florida obviously in order to obtain favorable evictions. Lowenhaupt's ex parte communication with Judge Skolnik is in total violation of the R.Reg.Fla.Bar prohibiting ex parte communication with judges and correspondingly their JAs. So one has to wonder, "What is the number of tenant evictions where BCHA, including its attorney, Lowenhaupt, had ex parte communication with judges to secretly obtain evictions and evade compliance with reversal by taking a voluntary dismissal?"

BCHA secretly owns and controls approximately twenty-four (24) low income apartment communities in Broward County consisting of 1296 apartments including Progresso Point (PP) from which it illegally evicted Kozich. See, January 26, 2020 Part II of "**BROWARD COUNTY HOUSING AUTHORITY EXPOSED**" Newsletter for an expose on the secret ongoings of BCHA. The Extended Low Income Housing Agreement (ELIHA), as with all Low Income Housing Tax Credit (LIHTC) apartment communities, between BCHA or its affiliate(s) and the Florida Housing Finance Corporation (FHFC) requiring a hearing or trial and evidence of good cause not to renew a lease is recorded in the public records and therefore a land use regulation, see Fla.Stat. 193.017(4) and 420.5099(6).

34

The undisclosed ELIHA mandates "No-Cause Eviction Protection" and is recorded in the public records of Broward County, and therefore is a land use regulation which runs with the land, similar to that of a deed regulation. A & P Investment Group, Inc. v. The Circle Property Owners Assoc., Inc., 741 So.2d 1139 (Fla. 4h DCA 1998). "A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land." Palm Beach Cty. v Cove Club Investors, Ltd., 734 So.2d 379, 382 n.4 (Fla. 1999) and Alternative Networking, Inc. v Solid Waste Auth. of Palm Beach Cty., 758 So.2d 1209, 1211 (Fla. 4th DCA 2000).

The undisclosed ELIHA by which RPA is extended tax credits for PP pursuant to 26 USC § 42, provides: 1) For private right of enforcement [Sec. 9. last para.]; 2) Mandates [para. (r)(ii)] that RPA conform to HUD Policy Handbook 4350.3 which incorporates the Tenancy Addendum, HUD-52641-A; 3) Mandates "No-Cause Eviction Protection" [para. (c)] which requires evidence of good cause not to renew a lease; and 4) Mandates that RPA continuously budget, implement and maintain seven (7) on-site Resident Programs at PP, which it has never done.

BCHA also purposely failed to disclose that a tenant has the right to enforce the

35

undisclosed ELIHA [article 9, last para.] and that it affords "No-Cause Eviction Protection" [para. (c)] to tenants which is supposed to be incorporated into any lease but is not. BCHA failed to disclose that in administering 26 USC § 42 LIHTC apartment communities that the IRS adopted HUD's policies, rules and procedures relating to federally supported Tenant Based Housing.

Pursuant to Fla.Stat. 83.42(1), Chapter 83, Fla.Stat., Florida Residential Landlord Tenant Law was not applicable in State Court and is not applicable here. This case is governed by Federal Law, i.e. 26 USC § 42, the Extended Low Income Housing Agreement with FHFC, the HUD-4350.3 Policy Handbook, the Tenancy Addendum, HUD-52641-A, the Housing Assistance Payment (HAP) contract, HUD-52641, and the HUD-VASH HCV. All of these documents bind BCHA under Federal law to provide evidence and proof of good cause not to renew Kozich's lease.

## 2) FEDERAL CASE NO. 15-60414-CIV-COHN/SELTZER

So that this Court has all of the facts here, back on March 2, 2015 and before RPA commenced its eviction in State Court, Kozich filed in the United States District Court, Southern District of Florida, Case No. 15-60414-CIV-COHN/SELTZER, alleging FOIA violations, mandatory injunctive relief, discrimination, etc. Judge Cohn dismissed the case stating that Kozich's claims were state claims. However, at that time Kozich had no knowledge, which had been purposely withheld, misdirected and not disclosed by BCHA and not included in the lease as required by HUD, FHFC and the ELIHA, that PP is a LIHTC apartment community making it subject to IRS Code 26 USC § 42, the ELIHA,

36

HUD policies and procedures found in HUD 4350.3 Policy Handbook, and numerous Code of Federal Regulations. And being the recipient of HUD-VASH HCV funding and a signatory to the Housing Assistance Payment (HAP) contract, HUD-52641, BCHA's incomplete 22 page lease which it presented in State Court is also subject to the Tenancy Addendum, HUD-52641-A, which it did not present in State Court, also requires evidence and proof of "good cause" for not renewing a lease.

### 3) FEDERAL CASE NO. 15-CV-61386-DIMITROULEAS/SNOW

In that case and Kozich's subsequent appeal in Federal Court, BCHA and its attorneys lied to the Federal Courts that Kozich did not appeal his eviction from state court. At the same time BCHA was seeking to permanently terminate Kozich's HUD-VASH HCV and Kozich was caught between a rock and a hard place. Kozich elected to defend against the permanent termination of his HUD-VASH HCV. Judge Dimitrouleas denied Kozich's timely motion for extension of time, dismissed Kozich's case based on BCHA's and its attorneys' lie and denied Kozich's Motion for Rehearing.

The 11th Circuit Court did not consider that Kozich had been involuntarily evicted and denied Kozich's appeal because Kozich had "vacated" his apartment.

And BCHA could not agree to a stay in any court because to do so it would have had to admit that it lied to the courts and that Kozich had appealed the state case.

### 4) KOZICH'S BANKRUPTCY,
### CASE NO.: 15-17458-JKO, SOUTHERN DISTRICT OF FLORIDA

Following RPA's obtaining its Default Final Judgment of Eviction and having no

other legal remedy before being evicted, Kozich immediately filed bankruptcy seeking protection of the Bankruptcy Court.

At the June 9, 2015 hearing BCHA and its attorneys again lied to Judge Olson that Kozich did not appeal his eviction from state court. BCHA's acknowledgement of Kozich's appeal would have stayed his eviction. Based on BCHA's and its attorneys" lies, Judge Olson granted BCHA's Motion for Relief from Stay.

## G. PRELIMINARY STATEMENT

1. Kozich is a 74 year old retired disabled veteran living on fixed low income with his VA pension and Social Security benefits. Kozich relies on his HUD-HUD-VASH HCV for financial assistance with his housing. Kozich relied on BCHA to lease him his apartment at PP and to provide him with better, safer, healthier and more efficient living conditions at PP. It appears that Kozich is the only tenant at PP that receives a HUD-VASH HCV.

2. Since the inception of Kozich's Lease both BCHA and PMI did not want him as a tenant at PP stating, "You should not have gotten it" and "You were lucky to get in". BCHA and PMI have been and continue to try to set up and railroad Kozich with false allegations that Kozich is in material violation of the Lease as an excuse not to renew Kozich's Lease as required by HUD, VA and FHFC.

3. PHA's renewal letter confirms that Kozich's housing subsidy is through a "HUD-VASH HCV", not as a "Section 8 rent subsidized tenant" as BCHA misrepresented previously. The difference is significant because being the recipient of a

38

"HUD-VASH HCV" Kozich's housing is incidental to his medical care which pursuant to Fla.Stat. 83.42(1) made Chapter 83, Florida Residential Landlord Tenant law upon which RPA relied for its eviction complaint inapplicable in State Court and inapplicable here. With no hearing or trial whatsoever in State Court, Kozich never had the opportunity to be heard or present his defenses and was denied due process.

4. BCHA and PMI, are Low Income housing tax credit unit owners and managers, have violated 26 USC § 42, et seq. and the First and Fourteenth Amendment to the U.S. Constitution by not renewing Kozich's lease and seeking to evict Kozich in retaliation for Kozich's formation and organization of the Progresso Point Tenants Organization (PPTO) advocating for better, healthier and safer living conditions at Progress Point (PP) apartment community. BCHA and PMI fabricated false and misleading allegations of "cause" as their excuse not to renew Kozich's lease but failed to provide any evidence or proof of the allegations.

5. BCHA is in violation of 26 USC § 42, et seq., the Extended Low Income Housing Agreement with FHFC, the HUD Policy Handbook 4350.3, the Tenancy Addendum, HUD-52641-A and the Housing Assistance (HAP) contract, HUD-52641 by failing to follow the statutory requirements that prohibit the owners of LIHTC apartments from evicting tenants and to not renew leases without evidence and proof of good cause to terminate the tenancies and to not renew leases.

6. BCHA is in violation of their statutory duties by not enforcing the terms and conditions of 26 USC § 42, the Extended Low Income Housing Agreement with FHFC,

the HUD Policy Handbook 4350.3, the Tenancy Addendum, HUD-52641-A, and the Housing Assistance (HAP) contract, HUD-52641.

7. Kozich brings this case to challenge s' means and method of terminating the tenancy of and not renewing Kozich's lease, and to establish Kozich rights to have his tenancy renewed until and unless there is evidence and proof of good cause to terminate his tenancy and to not renew his lease.

8. Kozich specifically seeks from this Court an order temporarily restraining, and a preliminary and permanent injunction enjoining, BCHA from continuing with and enforcing its voluntary dismissal in state court.

9. Kozich also specifically seeks from this Court an order temporarily restraining, and a preliminary and permanent mandatory injunction requiring that BCHA reinstate his HUD-VASH HCV, No. 105707 forthwith.

10. Kozich seeks from this court declaratory and injunctive relief providing that in order to comply with 26 USC § 42 of the IRS Code and the First and Fourteenth Amendment to the United States Constitution, BCHA must when attempting to terminate the tenancy of the residents including Kozich of LIHTC apartment communities including PP, include providing written notice of specific reasons of good cause for termination of any tenancy and for not renewing any lease, and thereafter must provide evidence and proof establishing good cause for termination of any tenancy and for not renewing any lease.

## H. THE LOW INCOME HOUSING TAX CREDIT (LIHTC) PROGRAM

1. 22 USC § 42 of the Internal Revenue Code created, as part of the 1986 Tax Reform Act, a Low Income housing subsidy program whereby in exchange for receiving tax credits, housing developers agree to make a certain percentage of the housing that they develop available to Low Income families at below-market rents for a specific period of time.

2. This federal Low Income housing subsidy program is known as the Low Income Housing Tax Credit (LIHTC) program.

3. Under the LIHTC program each state is allocated a certain number of tax credits according to the number of people in the state.

4. The tax credits are allocated by state government through the "state credit agency." In Florida, the state credit agency is the  Florida Housing Finance Corporation (FHFC) and  Smith is its Chairman of the Board.

5. FHFC is an instrumentality of the state exercising essential government functions. Those functions include allocating tax credits to various housing developers that are entitled to use those credits against their federal tax obligations so long as they comply with the rules and requirements of the LIHTC program.

6. FHFC allocated tax credits to  RPA on behalf of BCHA for its Progresso Point (PP) apartment community through its ELIHA with  RPA.

7. With the Extended Low Income Housing Agreement and in exchange for receipt of the tax credits, BCHA developed the PP apartment community and agreed to

abide by the terms of the LIHTC program as set forth in 26 USC § 42, et seq.

8.   FHFC's Extended Low Income Housing Agreement with RPA also relies on HUD Policy Handbook 4350.3, the Housing Assistance Payment (HAP) contract, HUD-52641 and the Tenancy Addendum, HUD-52641-A which also prohibit BCHA from terminating tenancies and prohibit BCHA from not renewing leases without proof and evidence of good cause for terminating tenancies and for not renewing leases at its LIHTC apartment communities (para. 8.).

9.   In addition to receiving tax credits, BCHA also received loans and subsidies from the U.S. Federal Housing Administration (FHA) and from FHFC to develop PP.

10. Under federally subsidized housing assistance programs tenancies may not be terminated in the absence of evidence and proof of "good cause" for terminating a tenancy or not renewing a lease.

11. As a federally subsidized housing assistance program and pursuant to the express statutory mandate at 26 USC § 42, et seq. LIHTC participants are required to provide tenants residing in LIHTC apartment communities, and the tenants are accordingly entitled to, the continuation and renewal of their tenancy in the absence of evidence and proof of "good cause" to terminate the tenancy or to not renew the lease.

12. A tenant in a LIHTC apartment community who is served with a non-renewal notice of his lease is entitled to evidence and proof of the alleged "good cause" for the non-renewal and has the opportunity to cure any alleged cause and to defend against the landlord's attempt to fabricate false and misleading allegations of "good cause."

42

### I. KOZICH'S FALSE ARREST AND FALSE IMPRISONMENT:

### 1) APRIL 20, 2016 BCHA PUBLICALLY NOTICED MEETING HELD AT CENTRAL OFFICE, 4780 NORTH STATE ROAD 7, LAUDERHILL, FL.

BCHA publically noticed the April 20, 2016 meeting on its website. So as to keep the public including Kozich from participating in public meetings and exercising their First Amendment Right to Free Speech and his Florida Sunshine in Government laws, and so as to remove Kozich from the public meeting held on April 20, 2016, Deibert, BCHA, Long, O'Loughlin, Thomas, Tolces, BSO and BSO Deputies I conspired to have Kozich arrested and imprisoned for resisting arrest without violence. However there was no predicate arrest and the State Attorney nolle prosecuted the case.

During Kozich's false arrest BSO Deputies I utilized unwarranted extreme physical force to arrest Kozich and unnecessarily kicked him when he was trying to get into the backseat of a BSO police car.

The BSO Deputies I unnecessary mistreatment of Kozich during his false arrest caused the BSO Deputy to drive Kozich to the emergency room of Plantation General Hospital where Kozich underwent emergency room treatment and incurred the expense of emergency room treatment.

### 2) NOVEMBER 21, 2016 BCHA'S PUBLICALLY NOTICED GROUND BREAKING CEREMONY FOR OPL AND OPCD HELD AT 3601 NE 3 AVENUE, OAKLAND PARK, FL

This groundbreaking ceremony was publicly notice and published on BCHA's website. So as to keep the public including Kozich from participating and exercising their First Amendment Right to Free Speech and his Florida Sunshine in Government laws,

and so as to remove Kozich from the ground breaking ceremony public meeting held on November 21, 2016, Deibert, BCHA, Long, O'Loughlin, ____, PHG, PHGB, Wheat, Braverman, Czonka, Deutch, BSO and BSO Deputies II conspired to have Kozich arrested and imprisoned for trespassing on a construction site, a felony. However the groundbreaking ceremony was publically notice and open to the public, and the State Attorney nolle prosecuted the case.

Upon falsely arresting Kozich, BSO and BSO Deputies caused Kozich's vehicle to be towed by Sal's which is under contract by the City to tow vehicles.

In both arrests, Kozich served notices on BSO but BSO never responded.

## J. CLAIMS FOR RELIEF

### a. FIRST CLAIM FOR RELIEF

1. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

2. The issuance of BCHA's non-renewal notice and the resulting eviction without cause by the s violate 26 USC § 42(h)(6)(B)(i); that part of the LIHTC statute that requires that tenancies be renewed unless there exists evidence and proof of good cause not to renew.

3. The issuance of BCHA's non-renewal Notice without evidence and proof of good cause for not renewing Kozich's lease is also in violation of the Extended Low Income Housing Agreement [para. (c)] which also requires evidence and proof of good cause not to renew.

44

4. And, the issuance of BCHA's non-renewal Notice without evidence and proof of good cause for not renewing Kozich's lease is in violation of para. 8. of the Tenancy Addendum, HUD-52641-A and the Housing Assistance Payment (HAP) contract, HUD-52641 which also require evidence and proof of good cause not to renew.

5. The Extended Low Income Housing Agreement (Sec. 9.) grants Kozich a private right of action to enforce the Agreement and 26 USC § 42.

## b. SECOND CLAIM FOR RELIEF

6. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

7. Kozich has a sufficient and significant property interest in his LIHTC and HUD-VASH HCV program for his housing that entitle him to due process safeguards.

8. BCHA's issuance of the December 22, 2014 non-renewal notice and the obtaining of a Default Final Judgment of Eviction through disinformation and secret ex parte communication with the County Court Judge, without any hearing or trial, violate the due process requirements of the Fourteenth Amendment to the United States Constitution.

9. Kozich has a private right of action to redress the violation of his Fourteenth Amendment due process rights pursuant to 42 USC § 1983.

10. The ELIHA (Sec. 9.) grants Kozich a private right of action to enforce the Agreement and 26 USC § 42.

## c. THIRD CLAIM FOR RELIEF

11. Kozich incorporates by reference each and every allegation of a material fact

45

contained in Paragraphs A. through I. as though fully set forth herein.

12. Kozich has a sufficient and significant property interest in his LIHTC apartment and the HUD-VASH HCV program for his housing that entitle him to due process safeguards.

13. Through his First Amendment constitutional right to free speech Kozich has the right to decimate his monthly Notice of Meeting .

14. BCHA's issuance of its December 22, 2014 non-renewal notice and the obtaining of a Default Final Judgment of Eviction through disinformation and secret ex parte communication with the County Court Judge, are the s' attempts to silence Kozich from exercising his first amendment right to free speech and are in retaliation for his exercising his free speech rights with his Notice of Meeting.

15. BCHA's issuance of its December 22, 2014 non-renewal notice and the obtaining of a Default Final Judgment of Eviction through disinformation and secret ex parte communication with the County Court Judge violated Kozich's right to due afforded by the Fourteenth Amendment to the United States Constitution.

16. Kozich has a private right of action to redress the violation of his First and Fourteenth Amendment rights pursuant to 42 USC § 1983.

17. The ELIHA (Sec. 9.) grants Kozich a private right of action to enforce the Agreement and 26 USC § 42.

### d. FOURTH CLAIM FOR RELIEF

18. Kozich incorporates by reference each and every allegation of a material fact

46

contained in Paragraphs A. through I. as though fully set forth herein.

19. The issuance of BCHA's non-renewal notice and the State Court eviction proceedings are retaliatory and therefore prohibited by LIHTC and HUD.

20. The issuance of the non-renewal notice and the resulting eviction without cause by the BCHA violate 26 USC § 42(h)(6)(B)(i), the portion of the LIHTC statute that requires that tenancies be renewed unless there is existing evidence and proof of good cause not to renew. BCHA has never presented any evidence and proof of good cause not to renew Kozich's lease.

21. The Extended Low Income Housing Agreement (Sec. 9.) grants Kozich a private right of action to enforce the Agreement and 26 USC § 42.

### e. FIFTH CLAIM FOR RELIEF

22. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

23. The s have violated their duties to enforce and to ensure compliance with the evidence and proof of good cause requirements of the LIHTC program for non-renewal in violation of Kozich's rights under 26 USC § 42 et seq., the Extended Low Income Housing Agreement, the HUD 4350.3 Policy Handbook, the Tenancy Addendum, HUD-52641-A, the Housing Assistance Payment (HAP) contract, HUD-52641 and numerous CFR's, ie. 24 CFR 5.850-5.852, 5.858-5.861, 5.901, 5.903, 5.905, 247.3, 880.607, 881.601, 883.701, 884.216, 880.607, 881.601, 883.701 or 247.3.

24. The ELIHA (Sec. 9.) grants Kozich a private right of action to enforce the

47

Agreement and 26 USC § 42.

### f. SIXTH CLAIM FOR RELIEF

25. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

26. BCHA has the authority to authorize renewal of Kozich's lease but refuse and continue to refuse to authorize renewal of Kozich's lease.

27. Kozich HUD-VASH HCV pays 70% or $584 of his rent with the 30% or $238 balance paid by Kozich.

28. Kozich's entitlement to his HUD-VASH HCV for his federally supported housing is contingent on there being an executed lease. And Kozich's HUD-VASH HCV is subject to termination if not utilized. Just as the s refuse to authorize renewal of Kozich's lease in retaliation for his constitutionally protected activities, the s also refuse to issue Kozich's HUD-VASH HCV allegedly because there is no lease. **NO AUTHORIZATION, NO RENEWAL, NO LEASE, NO HUD-VASH HCV, NO HOUSING.**

29. RPA fails to disclose that its "parent company", PHA, is the ultimate but secret owner of PP which has the authority, but in retaliation for Kozich's advocating tenant rights and the PPTO refuses to authorize renewal of Kozich's lease and is holding **hostage** Kozich's HUD-VASH HCV federal housing subsidy, which expires on August 28, 2015, as leverage to force Kozich into vacating his apartment at PP.

30. BCHA has violated their duties and responsibilities to enforce and to ensure

compliance with the good cause requirements of the LIHTC program in violation of Kozich's rights under 26 USC § 42 et seq., the ELIHA with FHFC [para. (c)]; the Housing Assistance Payment (HAP) contract, HUD-52641, and the Tenancy Addendum, HUD-52641-A.

### g. SEVENTH CLAIM FOR RELIEF
### *42 USC § 1983*

31. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

32. At all times material Kozich had a constitutionally protected right to be free from being arrested without probable cause and maintained the right to be free from unlawful detention, protected rights under the Fourth Amendment,

33. On April 20, 2016 and again on November 21, 2016 and acting under color of law, BSO Deputies I and II caused Kozich to be seized, detained, and deprived of his liberty in excess of 72 hours, against his will and without legal authority to do so, and despite his desire to remain.

34. At no time did BSO Deputies I and II have any reasonable or articulable probable cause which would support a constitutional seizure or arrest of Kozich.

35. On April 20, 2016 and again on November 21, 2016, notwithstanding having zero reasonable or probable cause, BSO Deputies I and II caused Kozich to be detained and searched, all in violation of clearly established law.

36. At all times material, any reasonable competent office having a reasonable

49

degree of training and expertise would have known that there was no constitutional or legally justifiable basis to seize Kozich.

37. At all times material, it was a clearly established violation of Kozich's constitutional right to be free from unreasonable searches and seizures when no reasonable or articulable suspicion or probable cause of any criminal activity existed to seize, search, detain or arrest Kozich.

38. As a direct and proximate result of the false imprisonment, Kozich has suffered bodily injury, pain and suffering, mental anguish and loss of capacity for enjoyment of life. These injuries and losses are permanent and continuing, and Kozich will suffer such losses in the future.

### h. EIGHTH CLAIM FOR RELIEF
*False Imprisonment*

39. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

40. This is an action, under the common law of Florida, for false arrest. Such claims arise from a common nucleus of operative facts as the violations of 42 USC §1983 as set forth in 32 thru 38. above.

41. On April 20, 2016 and again on November 21, 2016, BSO Deputies I and II acting in the course of their employment as BSO Deputies caused Kozich to be seized, detained and arrested and deprived Kozich of his liberty in excess of 72 hours, against his will and without legal authority to do so, and despite his desire to remain.

42. At no time did BSO Deputies I or II have any reasonable or articulable

suspicion or probable cause which would support a constitutional seizure or arrest of Kozich.

43. On April 20, 2016 and again on November 21, 2016, notwithstanding having zero reasonable or articulable suspicion and without probable cause, BSO Deputies I and II caused Kozich to be detained and searched, all in violation of clearly established law.

44. On April 20, 2016 and again on November 21, 2016, BSO Deputies I and II acted with malice, bad faith or wanton or willful disregard for the safety of Kozich's well being.

45. As a direct and proximate result of the false imprisonment, Kozich has suffered bodily injury, pain and suffering, mental anguish and loss of capacity for enjoyment of life. These injuries and losses are permanent and continuing, and Kozich will suffer such losses in the future.

### i. NINTH CLAIM FOR RELIEF
*Assault and Battery*

46. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

47. This is an action, under the common law of Florida, for assault and battery. Such claims arise from a common nucleus of operative facts as the violations of 42 USC §1983 as set forth in 32. thru 38. above.

48. On April 20, 2016 and again on November 21, 2016, BSO Deputies I and II acting in the course of their employment as BSO Deputies caused Kozich to be seized, handcuffed and shoved a BSO police car. BSO Deputies I and II acted with malice,

51

bad faith or wanton or willful disregard for the safety of Kozich's well-being.

49. As a direct and proximate result of the false imprisonment, Kozich has suffered bodily injury, pain and suffering, mental anguish and loss of capacity for enjoyment of life. These injuries and losses are permanent and continuing, and Kozich will suffer such losses in the future.

## j. TENTH CLAIM FOR RELIEF
### *Vicarious Liability-State Law Torts*

50. Kozich incorporates by reference each and every allegation of a material fact contained in Paragraphs A. through I. as though fully set forth herein.

51. This is an action brought against BSO pursuant to Fla.Stat. 768.28.

52. This count is in the alternative as permitted under Fed.R.Civ.P. 8 and within purview of McGhee v Volusia County, 679 So.2d 729 (Fla. 1996).

## I. ATTORNEY FEES AND COSTS

Pursuant to the Lease and as the prevailing party on the substantial issues, Kozich is entitled to attorney fees and costs, and requests an award of attorney fees and costs.

Kozich is entitled to attorney fees and costs pursuant to Federal and State law.

## K. DEMAND FOR JURY TRIAL

Kozich demands trial by jury on each issue triable by jury as the finder of fact.

## L. RELIEF REQUESTED

Based on the facts and law presented Kozich requests the following relief.

WHEREFORE, Plaintiff requests relief against the s as follows:

1. The Court exercise jurisdiction over this action and each of the s.

52

2. The Court issue a declaratory judgment that the s violated Section 42 of the Internal Revenue Code by attempting to terminate Kozich's tenancy and not renew Kozich's by service of a legally insufficient non-renewal notice that does not provide any evidence or proof of good cause for the termination and non-renewal.

3. The Court issue a preliminary and permanent injunction ordering the s to cease issuing notices terminating the tenancies and not renewing the leases of tenants at LIHTC apartment communities, including Kozich, without evidence and proof of good cause.

4. The Court issue a declaratory judgment that the policy and procedures of the s that they may terminate tenancies or not renew leases of tenants at LIHTC apartment communities pursuant to termination of tenancy notices that do not provide evidence and proof of good cause violates 26 USC § 42 of the Internal Revenue code, the Low Income Housing Agreement with FHFC [para. (c)]; the Housing Assistance Payment (HAP) contract, HUD-52641 and the Tenancy Addendum, HUD-52641-A).

5. The Court issue a preliminary and permanent injunction ordering the s to cease terminating tenancies and not renewing leases of residents of LIHTC apartment communities including PP and Kozich pursuant to termination of tenancy notices that do not provide evidence and proof of good cause.

6. The Court issue a declaratory judgment that s FHFC and Smith have violated Section 42 of the Internal Revenue Code by failing to enforce now and in the past the requirements set forth in Section 42 of the Internal Revenue Code providing that tenancies of residents at LIHTC apartment communities cannot be terminated or not renewed

without evidence and proof of good cause.

7.   The Court issue a permanent mandatory injunction against s FHFC and Smith to include in each of its agreements with current and future recipients of tax credits in Florida, monitor compliance with, enforce, and decline to allocate tax credits to housing developers that fail to agree to or fail to comply with the requirements set forth in 26 USC § 42 of the Internal Revenue Code including the utilization of a "model" lease as required by HUD-4350.3 Policy Handbook.

8.   The Court issue a declaratory judgment that the December 22, 2014 non-renewal notice of Kozich's tenancy at PP violates the First and Fourteenth Amendments to the United States Constitution and is therefore null and void.

9.   The Court issue a declaratory judgment that the December 22, 2015 non-renewal notice was retaliatory and in violation of Kozich's constitutionally protected First and Fourteenth Amendment rights.

10. The Court issue a declaratory judgment that the s have violated the First and Fourteenth Amendments to the United States Constitution by having a policy and practice according to which residents such as Kozich of LIHTC apartment communities such as PP may be terminated without evidence and proof of good cause.

11. The Court issue a temporary restraining order and preliminary and permanent injunctions enjoining the s from initiating and filing any eviction proceedings or any other action in State Court and from continuing with its County Court Case, Case No.  COCE 15-4735 (50), and including from enforcing its default final judgment of eviction and from

obtaining, serving and posting any Writ of Possession, or in the alternative find that the Default Final Judgment of Eviction, the Order striking Kozich's Answer and Affirmative Defenses, and the other corresponding Orders were all obtained by s RPA and PMI through deceptive and fraudulent means and methods, and are all therefore null and unenforceable.

12. The Court issue a preliminary and permanent injunction enjoining the s from initiating eviction proceedings or any other action to evict or eject tenants at LIHTC apartment communities including PP and Kozich without first providing written specific evidence and proof of "good cause" for termination or non-renewal, and thereafter establishing "good cause" pursuant to the applicable laws and regulations.

13. The Court issues a mandatory injunction requiring BCHA to forthwith renew Kozich's lease for 2015 and issue Kozich's HUD-VASH HCV.

14. The Court award the Plaintiff any other relief, including but not limited to the entry of such other temporary, preliminary and permanent injunctions as may be appropriate, and that the Court retain jurisdiction to enforce its orders and judgments.

15. The Court award Plaintiff attorney fees and costs.

16. Or such other relief as the Court deems just and equitable.

### VERIFICATION DECLARATION

I DECLARE under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

Don Kozich, Plaintiff

I HEREBY CERTIFY that the foregoing was filed with the court on April 20, 2020.

Don Kozich, Plaintiff
PO Box 2032
Fort Lauderdale, FL 33303
954.709.0537
dtkctr@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the following was served on all counsel or parties of record in accordance with the Service List attached.

Don Kozich, Plaintiff